UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOR-COTE, INC. and
STANLEY GROUSE,

    Plaintiffs,                                     Civil Action No. 18-CV-13051

vs.                                            HON. BERNARD A. FRIEDMAN

RELIANCE STANDARD LIFE
INSURANCE COMPANY and
TMTA INSURANCE AGENCY, LLC,

    Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR JUDGMENT[1]**

This matter is presently before the Court on cross-motions for judgment on the administrative record [docket entries 14 and 15]. Each side has responded to the other's motion and replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

*Background*

This case concerns disputed coverage under a group life insurance policy issued by Reliance Standard Life Insurance Company ("Reliance") to Nor-Cote, Inc. ("Nor-Cote") for the benefit of its employees. Barbara Grouse, a co-owner and officer of Nor-Cote, died in January 2018. Plaintiff, Barbara Grouse's spouse and designated beneficiary, filed a claim for the death benefit (Administrative Record, hereinafter "AR," at 85). On March 1, 2018, defendant denied the claim on the grounds that the decedent was not a full-time employee, as required by the policy (AR 70-72).

---

[1] Although this case has two plaintiffs, only one (Stanley Grouse) is important for present purposes. And although the case also has two defendants, only one (Reliance Standard Life Insurance Company) remains. Therefore, in this opinion the Court shall use the singular and refer to Stanley Grouse as plaintiff and Reliance Standard Life Insurance Company as defendant.

On March 7, 2018, plaintiff appealed on the grounds that Barbara Grouse, as a co-owner and officer of the company, "worked 30 to 40 hours per week and did not punch a time card" (AR at 87). On May 8, defendant reaffirmed its decision that "Ms. Grouse did not satisfy the definition of '*Full-time*,' she was not in a class eligible for insurance, and therefore, no insurance coverage under the Policy was in effect at the time of her death" (AR at 77; emphasis in original). Plaintiff then brought the instant action in state court for breach of contract. Pursuant to *Metropolitan Life Ins. Co. v. Gen. Motors Corp.*, 481 U.S. 58 (1987), defendant timely removed the case to this Court, as plaintiff's claim seeks benefits under an employee benefit plan and is therefore preempted by ERISA. *See* 29 U.S.C. § 1132(a)(1)(B).

***Legal Standards***

In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring), the Sixth Circuit held that when deciding a case such as this, the Court "should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." As this Court has noted, "[c]ourts do not use summary judgment procedures for deciding [ERISA] benefit claim denials; rather, parties can file cross motions for judgment on the administrative record . . . ." *Zack v. McLaren Health Advantage, Inc.*, 340 F. Supp. 3d 648, 655 (E.D. Mich. 2018).

The parties agree that the Court's review is *de novo*. *See* Def.'s Br. at 8 (PageID.94), Pl.'s Br. at 10 (PageID.164). "When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins*, 150 F.3d at 616. This standard of review applies "with respect to both the plan administrator's interpretation of the plan and the plan

2

administrator's factual findings." *Id.* The review "is without deference to the decision or any presumption of correctness, based on the record before the administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990). Further,

> [w]hen interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their "plain meaning in an ordinary and popular sense." *Farhner v. United Transp. Union Discipline Income Protection Program*, 645 F.3d 338, 343 (6th Cir. 2011) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000)). Where plan language is ambiguous, extrinsic evidence may be considered to discern the purpose of the plan as the average employee would have reasonably understood it. *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006).

*Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012).

***Procedural History and Record Evidence***

The policy at issue provides life insurance for "active, Full-time employee[s]" who fall within one of four "eligible classes" (AR at 7). The parties agree that if Barbara Grouse worked full-time she fell within Class 1, which encompasses officers "who had supplemental life and accidental death and dismemberment insurance coverage with the prior carrier on June 30, 2006 . . . ." *Id.* The parties disagree as to whether she was "active, Full-time." The policy does not define "active" by itself, but it does state, albeit ungrammatically:

> "Actively at work" and "active work" means the person actually performing on a Full-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

(AR at 9). The policy also states that "'Full-time' means working for you for a minimum of 30 hours during a person's regularly scheduled work week." *Id.*

On the claim form plaintiff submitted on January 31, 2018, he indicated that Barbara

3

Grouse died on January 15, 2018; that her "Occupation/Title/Position" was "owner/secretary"; that her "Salary on Last Benefit Change Date Per Policy" was $10,000; that her employment status was "active"[2]; that the "Number of Hours Employee Scheduled to Work Per Week in the Place Where the Job is Normally Performed" was "10+"; that the number of hours she actually worked varied; that she last worked on December 31, 2017; and that she was "Part-time"[3] (AR at 85).

Defendant denied the claim on March 1, 2018 (AR at 70-72). After quoting the policy's definitions of "actively at work," "active work," and "Full-time," defendant stated that "[a]ccording to the claim form submitted, Barbara Grouse was a part time employe" and therefore "not a member of the Eligible Class for this insurance" (AR at 70-71).

Plaintiff promptly appealed. In a letter to defendant dated March 7, 2018, he wrote:

> I, Stanley C. Grouse, husband of deceased insured, Barbara Grouse, is appealing your decision of denying the life insurance payout of $50,000.00. Barbara Grouse was half owner of Nor-Cote and served as secretary/treasurer of the company. She worked 30 to 40 hours per week and did not punch a time card.
>
> Nor-Cote, Inc. paid premiums for Barbara Grouse for over 35 years. Reliance dropped the coverage over the years due to her age. She filled the requirements as an employee so therefore I am entitled to the insurance payout.

(AR at 87). Nearly seven weeks later, in a letter to plaintiff dated April 23, 2018, defendant wrote that it had "received your request for review regarding the above claim for disability [sic] benefits"

---

[2] This line of the claim form inquired as to the "Status of Employee on Date of Death" and offered four boxes to be checked: Active, Retired, Approved Premium Waiver for Disability, and Approved Leave of Absence (Explain). Plaintiff checked "Active" (AR at 85).

[3] This line of the claim form inquired whether "Employee Was: (Check All That Apply)" and offered ten boxes to be checked: Full-time, Part-time, Union, Non-Union, Hourly, Salaried, Exempt, Non-Exempt, Commissioned, and Other (Explain). Plaintiff checked "Part-time" (AR at 85).

4

and asked that he provide "[p]ayroll records for the period of January 1, 2017 to December 31, 2017" (AR at 75). On April 26, 2018, presumably in response to this request, plaintiff faxed defendant a pay stub showing that Nor-Cote paid Barbara Grouse $10,000 for the pay period from February 17 to March 19, 2017 (AR at 89). Also on April 26, notes from the claim file indicate that Stanley Grouse telephoned defendant and spoke with a representative:

> He advised his wife (the clmt) was Co-Owner/Secretary of the company and never punched a time card. Her hours worked per week varied, sometime 30, sometimes 40, etc. He does not have payroll records, only copies of checks she rec'd. How she was paid depended on how the company was doing. If the company was doing well, she'd receive payment. If the company was not doing well, she would not be paid, as the money would go back into the company. He is going to send me a copy of the checks. That is all he has. . . .

(AR at 43).

In the meanwhile, the trade association to which Nor-Cote belongs, Tooling, Manufacturing & Technologies Association ("TMTA"), had learned of the denial of plaintiff's claim. In an email to defendant dated April 17, 2018, Elaine Burger-Laskosky of TMTA wrote:

> Nor-Cote had one of their owners die. Stanley and Barbara Grouse were co-owners. He submitted a death form and I can see why you rejected it right off, but further talks with him gave a clearer picture. Reliance wanted time cards, but owners don't punch in. Also, the form says she only made $10,000 last year. In our industry, it happens quite often where the owners forego their pay and put it back into the company to keep it running. Mr. Grouse sent in a few years' worth of W-2s and you can see she made different amounts each year.[4] Her hours varied each week from 30 hours to 50 hours. On vacation (which she was when she died) she was putting in 10 hours. The girl who filled out the form even got the amount incorrect as it should be $50,000 basic and $5,000 supplemental.

---

[4] The only W-2's in this record are for 2016 and 2017, and both show that Barbara Grouse was paid $10,000 by Nor-Cote, Inc., in each of those years (AR at 83-84).

5

(AR at 102).

On May 8, 2018, defendant reaffirmed its decision denying plaintiff's claim on the grounds that Barbara Grouse "was not working full-time prior to her date of death" (AR at 76). Defendant further stated:

> The Policy stipulates that in order to be eligible for insurance under this policy, Ms. Grouse must be a member of an Eligible Class. To be a member of an Eligible Class, she must be a Full-time employee, working a minimum of 30 hours per week. On your Proof of Loss Claim Statement, you indicated that Ms. Grouse was a part-time employee. You also indicated that she was scheduled to work 10+ hours per week, and that the number of hours she actually worked per week varied.
>
> In your letter of appeal, you indicated that Ms. Grouse was Co-Owner of Nor-Cote Inc. and served as Secretary/Treasurer. You stated that she worked 30-40 hours per week, and that she did not punch a time card. We asked that you provide us with a copy of her payroll records from January 1, 2017 to December 31, 2017, so that we could confirm whether or not she was working the required 30 hours per week. You indicated that Ms. Grouse's last day worked was December 31, 2017, but the only pay stub we were provided was dated March 24, 2017. You also provided W2 statements from 2016 and 2017, each totaling $10,000.00. This information confirms that Ms. Grouse was a part-time employee.
>
> In conclusion, Ms. Grouse did not satisfy the definition of *"Full-time,"* she was not in a class eligible for insurance, and therefore, no insurance coverage under the Policy was in effect at the time of her death. As such, the Life Department's original decision to deny benefits must be upheld.

(AR at 77; emphasis in original).

*Analysis*

Having reviewed the administrative record and considered the parties' briefs, the Court finds and concludes that plaintiff is entitled to the death benefit under the policy and that defendant's denial of plaintiff's claim to this benefit was contrary to plaintiff's rights under the

6

policy.

As noted, defendant denied the claim in this matter on the grounds that Barbara Grouse "was not working full-time prior to her date of death" (AR at 76). The preponderance of the evidence does not support this conclusion.[5] Defendant pointed to the claim form, signed by plaintiff but apparently not filled out by him,[6] indicating that Barbara Grouse was a part-time employee who was scheduled to work "10+" hours per week, but whose hours varied, and to the fact that the W-2's showed $10,000 in earnings in 2016 and 2017 (AR at 77). But this is a slim reed indeed upon which to deny plaintiff's claim.

First, the "10+" figure was written on the claim form in response to the question, "Number of Hours Employee Scheduled to Work Per Week in the Place Where the Job is Normally Performed" (AR at 85). This question contains no time frame reference, and there is evidence that this number referred to the number of hours Barbara Grouse had been working while on vacation immediately prior to her death. Burger-Laskosky informed defendant on April 17, 2018, that Barbara Grouse "was putting in 10 hours" while "[o]n vacation (which she was when she died)" (AR

---

[5] The evidence in the record as to the number of hours Barbara Grouse was working at the time of her death is meager, but the Court's review is limited to that which was before the administrator. Surprisingly, defendant did not take the simple step of contacting *anyone* at Nor-Cote other than plaintiff who might have shed light on this important issue, such as an office manager or anyone working in a payroll, accounting, or human resources capacity. A simple telephone call to any one such person (or further questioning of plaintiff, the president and co-owner of the company, when he called defendant on April 26, 2018) could have provided valuable information about this critical issue, but it does not appear that defendant exerted any effort in this regard. Indeed, the 523-page record in this matter consists almost entirely of multiple copies of email communications between various employees of defendant, but very little evidence that any of them attempted to gather information about Barbara Grouse's work hours.

[6] As noted above, Burger-Laskosky indicated that the claim form was filled out by a "girl," presumably one of plaintiff's office assistants (AR at 102).

at 102). Similarly, while the "Part-time" box was checked, the claim form did not define this term or set a time frame. Nor is there any evidence in the record to indicate what plaintiff (or whoever filled out the form) understood "part-time" to mean. Working "full-time" is commonly understood to mean working 40 hours per week or more, and "part-time" means less than "full-time." If Barbara Grouse worked more than 30 hours but less than 40 hours per week, she would be "full-time" under the policy but "part-time" in a layman's understanding of the term. Defendant's decision to deny the claim largely on these unclear claim form answers was unreasonable.

Importantly, both plaintiff and Burger-Laskosky informed defendant that the 10+ figure was a mistake and that Barbara Grouse, who was a long-time co-owner of Nor-Cote, in fact worked between 30 and 50 hours per week (AR at 43, 87, 102). Both plaintiff and Burger-Laskosky further informed defendant that, as a co-owner of Nor-Cote, Barbara Grouse did not punch a time card and that her apparently low earnings of $10,000 per year were due to the fact that, as is customary in the industry, she would forego pay when the company was not doing well in order to keep the company running (AR at 43, 102), which also explained why plaintiff could not produce any pay stubs for her.

In light of the additional, and perfectly plausible, information provided by plaintiff and Burger-Laskosky, the "10+" and "part-time" answers on the claim form must be understood either as clerical errors (which under the policy must be disregarded, *see* AR 10) or as ambiguities which were later clarified. A decision on this claim could not reasonably and lawfully be made based largely on those answers. Rather, the decision must be based on a full and fair consideration of all of the information in the record. Having reviewed the entire record, the Court finds by a preponderance of the evidence that Barbara Grouse was working at least 30 hours per week at the

8

time of her death.[7]

***Conclusion***

Because Barbara Grouse was an active, full-time member of an eligible class, she was covered by the policy. Defendant acted in violation of plaintiff's rights by denying his claim as Barbara Grouse's beneficiary. Accordingly,

IT IS ORDERED that plaintiff's motion for judgment on the administrative record is granted.

IT IS ORDERED that defendant's motion for judgment on the administrative record is denied.

IT IS FURTHER ORDERED that the complaint is dismissed as moot as to plaintiff Nor-Cote, Inc.

Dated: May 8, 2019  
       Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] The record indicates that plaintiff last worked on December 31, 2017, and that she died on January 15, 2018 (AR at 82, 85). The fact that she was on vacation at the time of her death (AR at 102) does not mean that she was not working full-time (AR at 9), and defendant does not argue otherwise.